# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                   )
**UNITED STATES OF AMERICA,**      )
                                   )
    **v.**     )
                                   )    Criminal Action No. 18-180 (RMC)
**DAVID N. CARTER,**               )
                                   )
    **Defendant.** )
_____)

## MEMORANDUM OPINION ON SENTENCING

On November 1, 2018, David N. Carter came before this Court for sentencing on a charge of Escape from Custody, 18 U.S.C. § 751(a), for walking away from Hope Village, a Residential Reentry Center or halfway house located in the District of Columbia, to which Mr. Carter had entered a plea of guilty. This Court imposed a sentence of eleven (11) months' incarceration with no supervision thereafter and writes this memorandum opinion to explain its reasoning.

## I. BACKGROUND

Mr. Carter's presence in Hope Village was part of a prior sentence entered by the District of Columbia Superior Court. Mr. Carter had been sentenced in the Superior Court on November 22, 2011 to 20 months' custody and three years of supervised release on two drug charges. His supervised released was revoked due to violation on June 15, 2016 and he was sentenced to an additional 30 months in custody. On February 21, 2018, Mr. Carter was furloughed to Hope Village by the Bureau of Prisons to complete the remainder of his sentence, with a projected release date of August 17, 2018.

Mr. Carter left Hope Village on April 16, 2018 without authorization and never returned. He was indicted in this case on June 14, 2018[1] and arrested on June 29, 2018. Mr. Carter pled guilty to Escape from Custody, in violation of 18 U.S.C. § 751(a), without a plea agreement. The maximum penalty for his crime is a term of imprisonment not greater than five years, a fine not to exceed $250,000, a term of supervised release of not more than three years, and a special assessment of $100. As calculated by the Probation Office and accepted by the Court, his adjusted Offense Level was 7 and his total criminal history score was 21, which established a criminal history category of VI. Therefore, the recommended sentence under the United States Sentencing Guidelines was 15 to 21 months in custody.

The Court received and reviewed sentencing memoranda from both Mr. Carter and the government, heard argument at the sentencing hearing, and heard from Mr. Carter himself. *See* Gov't Sentencing Mem. [Dkt. 10]; Mr. Carter Sentencing Mem. [Dkt. 11]. The government recommended a sentence of 20 months' incarceration and 36 months' supervised release, coupled with 100 hours of community service. Mr. Carter sought a sentence of time served and 24 months' supervised release. There is no mandatory minimum.

## II. LEGAL STANDARD

At sentencing, a United States District Judge must first ascertain and consider the appropriate sentencing range recommended by the Sentencing Guidelines. However, the Guidelines are no longer mandatory and provide recommendations based on national experience only. *United States v. Booker,* 543 U.S. 220 (2005). To devise a sentence that is "sufficient, but

---

[1] His prosecution in federal court for escape from Hope Village, rather than in the D.C. Superior Court, represents a new policy of the U.S. Attorney's Office.

not greater than necessary," courts must also fully consider the sentencing factors identified in 18 U.S.C. § 3553(a). Those relevant here include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct;
> >
> > (C) to protect the public from further crimes of the defendant; and
> >
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for—
>
> > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . .

18 U.S.C. § 3553(a).

## III.  ANALYSIS

The Court varied from the Guidelines in sentencing Mr. Carter, finding that 11 months' incarceration with no further supervision would be "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

Mr. Carter has a lengthy history of various low-level offenses for which he has served time in prison, as sentenced, and consistently failed to observe the terms of probation or supervised release. However, during and after his most recent term in Federal Correction Institute (FCI) Gilmer, a medium-security facility in Glenville, West Virginia, he appears to have

decided to turn his life in a different direction. While at FCI Gilmer, Mr. Carter received no disciplinary infractions and successfully completed numerous Bureau of Prisons (BOP) programs, including 210 hours of GED classes, 140 hours of the Life Skills program, 46 hours of the In/Out Dads program, 56 hours of Custodial Maintenance training, 15 hours of Commercial Driver's License training, 10 hours Release Prep classes, and 3 hours of Re-Entry Lab classes. *See* Mr. Carter Sentencing Mem. at 1-2. Mr. Carter also worked on the Food Service Detail. *See id*.

When Mr. Carter was returned to BOP custody after his escape from Hope Village, the BOP took away all non-vested Good Time Credits, required Mr. Carter to serve the remainder of his 30-month sentence in BOP custody at a more secure facility than FCI Gilmer, and extended his prison time by nearly three months.[2]

Mr. Carter is now 37 years old. He persuaded the Court that he is tired of spending his life in jail and is determined to take a new path and avoid criminal conduct. The nature of his crime—escape from a halfway house—is moderately serious, but would allow a sentence between zero and six months if Mr. Carter did not have such a criminal history.

The Court concluded that 20 months' incarceration for his escape was more severe than warranted, but that time served would ignore the escape crime altogether. Neither was appropriate. The record also indicates that imposing a sentence of post-prison supervision could set up Mr. Carter for failure, as before, and a continuation of his in-and-out-of-prison life without real purpose.

Thus, the history and characteristics of the defendant suggest that he has gotten older and wants to end his low-level criminal lifestyle. The offense of escape from a halfway

---

[2] It is noted that incarceration at the D.C. Jail is qualitatively more severe than BOP custody.

house is only moderately serious and Mr. Carter will pay a much steeper price for it than when it was commonly enforced in Superior Court. In addition, a term of 11 months' incarceration, which is too short to earn an early release to the community and long enough to remember, will deter Mr. Carter and others from similar escapades. The record shows no evidence of criminal conduct when Mr. Carter was on escape status and this period of incarceration will protect the community. Mr. Carter's inability in the past to comply with the terms of supervision suggest that supervision does not assist him to respect the law; to the contrary, he has been repeatedly unsuccessful. The Court sees no value in continuing the practice.

Whether Mr. Carter will succeed will be in his own hands upon his release from 11 months' incarceration.

### IV. CONCLUSION

Having considered the arguments made by the parties in their sentencing memoranda and at the sentencing hearing and having evaluated the factors required by 18 U.S.C. § 3553(a), the Court sentenced Mr. Carter to a term of 11 months' incarceration with no supervised release to follow.

Date: December 20, 2018

ROSEMARY M. COLLYER
United States District Judge